The State of Ohio, Appellee, *v.* Osborne, Appellant.

(No. 76-953—Decided June 22, 1977.)

*Mr. George C. Smith,* prosecuting attorney, and *Mr. Ronald J. O'Brien,* for appellee.

*Mr. Carl T. Wolfrom,* for appellant.

I.

*Per Curiam.* Appellant contends first that the use for impeachment purposes of appellant's "silence" (*i. e.,* his failure to offer an alibi during numerous conversations, with numerous parties, in varied contexts, wherein he apparently discussed the murder of Mrs. Hermalee Ross) violated a privilege of defendants against self-incrimination granted by the United States and Ohio Constitutions, and violated appellant's rights to due process and to due course of law under the United States and Ohio Constitutions respectively. Appellant relies heavily upon the cases of *Doyle* v. *Ohio* (1976), 426 U. S. 610, 49 L. Ed. 2d 91, and *State* v. *Stephens* (1970), 24 Ohio St. 2d 76, 263 N. E. 2d 773.

The question in *Doyle* was whether a prosecutor may seek to impeach a defendant's exculpatory story, told initially at trial, by cross-examining him concerning his failure to have told *any* story after receiving warnings pursuant to *Miranda* v. *Arizona* (1976), 384 U. S. 436. The Supreme Court held that the use for impeachment purposes of a petitioner's silence, after arrest and after receiving *Miranda* warnings, violates his right to due process of law under the Fourteenth Amendment. Since such silence may be no more than the arrestee's exercise of his *Miranda* rights, every post-arrest silence is "insolubly ambiguous," and although the warnings encompass no explicit promise that silence carries no penalty, there is an implicit assurance of that fact to the arrestee.

Appellant, who did not remain silent as did the defendant in *Doyle,* notes that during his cross-examination and re-cross-examination by the prosecution, and in closing argument to the jury the prosecutor referred to appellant's failure, before taking the stand on direct examination, to relate his trial-stated version of the events following the death of the decedent. We have examined the trial transcript relative to this issue.

One pre-trial conversation transpired between appellant and James A. Westlake. Appellant was not in custody, and obviously had received no *Miranda* warnings. Westlake was not a law enforcement agent; he was a prisoner in the Chillicothe Correctional Institute.

A pre-trial conversation between appellant and the police apparently took place on the Saturday following the homicide. The record does not establish either that appellant at this point received *Miranda* warnings, or that he was in custody.

Appellant's pre-trial contacts with his then-attorney, Mr. Thomen, were brought out during prosecution cross-examination of appellant. Thomen obviously was not a law enforcement officer, and there is, of course, no indication appellant received *Miranda* warnings relative to his contacts with Mr. Thomen, a relationship extending over several months.

Another pre-trial conversation occurred between appellant and a law officer, Detective Price, while appellant definitely was in custody. Again, his behavior cannot by any stretch of the imagination be construed as "silence." He testified that he had been driven by the police from Pennsylvania to Ohio for eight hours or more on the occasion of the Price dialogue, and that "We talked all the way back."

Another pre-trial contact was a jailhouse exchange between appellant and his sister, Kay Osborne. Appellant was in custody and, inasmuch as there was testimony at trial indicating that Kay Osborne's conversation with appellant was taped, she apparently served as a police agent. However, there is no indication of any "silence" of appellant in this conversation, or that any "silence" resulted from reliance upon *Miranda* warnings.

Appellant was never silent. He was garrulous. All the foregoing pre-trial exchanges entailed one or a combination of the following: 1. Appellant was not in custody; 2. Appellant dealt with non-law enforcement personnel; 3. Appellant did not rely upon *Miranda* warnings and remain silent.

The facts of this case make it extremely remote from the teaching in *Doyle*: "After an arrested person is formally advised by an officer of the law that he has a right to remain silent, the unfairness occurs when the prosecution, in the presence of the jury, is allowed to undertake impeachment on the basis of what may be the exercise of that right." *Doyle, supra,* at 426 U. S. 610, footnote 10, 49 L. Ed. 2d 98.

If a defendant voluntarily offers information to police, his toying with the authorities by allegedly telling only part of his story is certainly not protected by *Miranda* or *Doyle*. A contrary rule would foreclose any cross-examination, for fear that it might reveal impeaching information intentionally withheld and inextricably interwoven with that which was divulged. The Supreme Court in various contexts has reminded us that "while the Constitution protects against invasions of individual rights, it is not a

suicide pact." *Kennedy* v. *Mendoza-Martinez* (1963), 372 U. S. 144, 160; *Aptheker* v. *Secretary of State* (1964), 378 U. S. 500, 509 (quoting *Mendoza-Martinez*). This proposition of law is overruled.

## II.

Appellant argues next that the right of the prosecution in a criminal action to cross-examine and impeach an accused who takes the stand does not abrogate the right of the accused to confront and cross-examine every person whose declarations the state seeks to employ against him.

Over objection by appellant, the prosecution cross-examined him as to what Kay Osborne had told him when she visited him in jail. The exchanges between the prosecution and appellant disclosed that this conversation had been recorded. The prosecutor asked appellant whether Kay had then informed appellant that Alberta Osborne had told the entire murder story to one Mr. Thomen, and further asked appellant whether he recalled his reaction to Kay's disclosure. Appellant's answer to both of the latter questions was that he had no recollection.

Probing the testimony of appellant concerning this conversation might reasonably have been expected by the prosecution to test appellant's credibility. Testimony concerning the appellant's end of the conversation obviously would have been of little use unless the jury were informed of Kay's part in the exchange; this especially is so when, as was indicated by counsel for appellant before the bench, appellant's role in the conversation consisted of an exclamation. The import of his exclamation would be meaningless out of context.

If it is intended to discredit a witness by proving something he said concerning the case, the witness first is to be asked during cross-examination whether he made the statement which the opposition intends to prove. In satisfying this requirement, the cross-examiner properly asks the witness whether he made the alleged statement, outlining its substance, and specifying the place, time, and the person to whom made. This particularity refreshes the

memory of the witness relative to the alleged statement. McCormick on Evidence (2 Ed.), 72 (1972).

Our examination of the record discloses that appellant, during cross-examination and re-cross-examination, displayed inability of recollection a minimum of two dozen times. The method by which the prosecution framed its questions concerning the conversation with Kay not only laid the necessary foundation for probing the credibility of appellant, but was a proper attempt to refresh his faltering memory.[1] This proposition of law is overruled.

### III.

Appellant asserts further that evidence of certain other acts by him was admissible only if such evidence is reasonably pertinent to a material issue at trial.

Under cross-examination, appellant testified that in July 1974, he had contacted the police concerning a homicide. Appellant conceded that he had given the police "a half truth" and "didn't tell them the whole truth." Appellant testified that only while preparing for a polygraph test did he amend his lie relative to the incident.

We disagree with appellant that this testimony could be admissible, if at all, only under R. C. 2945.59.[2] Appellant's admission that, concerning homicide, he lied to the police is singularly relevant and admissible as bearing upon his credibility in a homicide case.

---

[1] Appellant avers that a "gentlemen's agreement" that absolutely no mention of Kay Osborne be made was reached before the bench at trial. Our examination of the record sustains the state's belief that this agreement was specifically in reference to any mention of Kay Osborne during argument.

[2] "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant." R. C. 2945.59.

On re-direct examination, the prosecution elicited from Edgel Ross that appellant had sold a locket with a diamond in it to him, appellant apparently telling him that the locket had belonged to Alberta. The sale took place on a public street, for the sum of $5. Appellant submits that the street sale of a diamond locket for so little must lead a jury to infer that he had been trafficking in stolen property. Again, we are not convinced that this testimony might only have been admissible, if at all, under R. C. 2945.59.

The jury clearly could have believed that appellant had a motive in the sale of the locket other than the speedy disposal of stolen goods. The testimony demonstrates, or plausibly could be interpreted to demonstrate, appellant's interest in bringing his mother, Alberta, and Mr. Ross together. Such testimony lent credence to the state's theory of the case, it was proper re-direct examination and it was independently relevant. This proposition of law is overruled.

### IV.

Appellant urges that a defendant's right to trial by a fair and impartial jury, as guaranteed by the Sixth Amendment to the United States Constitution and by Section 10 of Article I of the Constitution of Ohio, should be protected by granting a motion for change of venue when a court order, issued in lieu thereof and designed to diminish the effect of pre-trial publicity, has been disobeyed.

Crim. R. 18(B) preserves the historic discretionary character of change of venue. Moreover, that discretion is to be premised upon the appearance, or lack thereof, that a fair and impartial trial otherwise could be held. The provisions of R. C. 2901.12(I) are, in relevant part, identical.

Appellant submits that the trial court ought to have granted his motion for a venue change inasmuch as the jurors originally selected for his case had been put on notice of the name of the case despite considerable publicity concerning appellant and the homicide. Two motions by appellant for change of venue were denied because the trial

court discharged the originally scheduled jurors pursuant to drawing a new panel of the maximum number.

However, the jury summons for the new panel likewise contained the name of appellant. This was not directly violative of a trial court order, because no written court order or entry to the effect that the summons not bear the style of the case obtained, and by our reading of the record, the oral order as to drawing a new venire was not strictly premised upon omitting appellant's name from the summons.

Appellant relies upon *Forsythe* v. *State* (1967), 12 Ohio Misc. 99, 230 N. E. 2d 681, which holds that prejudicial publicity alone may require reversal of a conviction of one tried for first degree murder. We need not approve or disapprove of that case, since its facts are thoroughly distinguishable from those of the case at bar. Further, appellant makes no effort to deny that the 256 page transcript of *voir dire* in the instant case disclosed that those jurors who heard his case had neither formulated nor disclosed any opinion as to his guilt or innocence, had stated they would be fair and impartial, and vowed that they would determine the case solely upon the evidence and charge of the court. The trial judge did not abuse his discretion by concluding that the jurors could act fairly and impartially toward appellant. This proposition of law is overruled.

## V.

Appellant submits that the imposition of capital punishment pursuant to R. C. 2929.04 is inconsistent with the prohibition against cruel and unusual punishments of the Eighth and Fourteenth Amendments to the Constitution of the United States, and cites *State* v. *Woods* (1976), 48 Ohio St. 2d 127, 357 N. E. 2d 1059. *Woods* held that within the meaning of the standard for mitigation of the death sentence for aggravated murder in R. C. 2929.04(B), duress or coercion may be established by proof that force, threat of force, strong persuasion or domination by another, necessity, or some combination thereof, has overcome the

mind or will of the defendant so that he acted other than he ordinarily would have acted in the absence of those influences.

Appellant notes that at his mitigation hearing, when the trial court discussed duress and coercion and found that neither was present, it failed to state what definition of duress and coercion it was utilizing. Hence, appellant demands a new sentencing hearing to guarantee that his sentence is determined under proper standards.

At the mitigation hearing, the trial court made reference to the prosecution's closing argument. Therein, the assistant prosecutor apparently looked to a common law definition of duress and coercion. Because the trial court cited the assistant prosecutor's argument, appellant deems it probable that the trial court wrongly applied the common law definition. We disagree.

The constitutional scheme in Ohio for imposition of capital punishment was held constitutional by this court in *State* v. *Bayless* (1976), 48 Ohio St. 2d 73, 357 N. E. 2d 1035. The court does not hold that, as a general rule, a trial court's mitigation hearing discussion of duress and coercion must include an explicit definition of these terms. See *State* v. *Black* (1976), 48 Ohio St. 2d 262, 358 N. E. 2d 551; *Woods, supra.* We have examined the relevant portions of the transcript and conclude that the reference to the assistant prosecutor's argument did not demonstrate reliance by the trial court upon an erroneous definition of duress and coercion. This proposition of law is overruled.

## VI.

Appellant complains next that the procedure for the imposition of capital punishment set forth in R. C. 2929.04 does not require the prosecution to prove beyond a reasonable doubt every fact necessary to constitute the crime charged. Appellant notes that R. C. 2929.04 distinguishes between capital and noncapital aggravated murder, but does not place the burden of establishing the absence of mitigating circumstances (on which the distinction hinges) on the prosecution, where appellant believes the burden belongs.

Appellant places great reliance upon *Mullaney* v. *Wilbur* (1975), 421 U. S. 684.

*Mullaney* appraised a state requirement that a defendant charged with murder prove by a preponderance of the evidence that he acted in the heat of passion on sudden provocation in order to reduce the charge to manslaughter. The Supreme Court concluded that the due process clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case.

Appellant refers us also to the opinion of this court in *State* v. *Robinson* (1976), 47 Ohio St. 2d 103, 351 N. E. 2d 88. The question presented there was whether the common law rule that self-defense must be proved by a preponderance of the evidence had been statutorily replaced consequent to R. C. 2901.05(A). The court held that in a criminal case involving the affirmative defense of self-defense, a defendant has only the burden of going forward with evidence of a nature and quality sufficient to raise that defense, and does not have the burden of establishing the defense by a preponderance of the evidence. See, also, *State* v. *Matthews* (1976), 47 Ohio St. 2d 119, 351 N. E. 2d 98.

It is apparent from *Mullaney* and *Robinson* that neither applies to mitigation hearings or sentencing, and that neither case is reasonably apposite to the facts at bar. Furthermore, the record clearly establishes that no evidentiary burden was placed upon appellant at his mitigation hearing, and we do not accept his argument that constitutional standards require that such a burden be affirmatively lodged with the state. This proposition of law is overruled.

## VII.

Appellant urges finally that capital punishment cannot be imposed upon him pursuant to R. C. 2929.04(A)(2), because the state has failed to prove beyond a reasonable doubt the aggravating circumstance that the decedent was murdered for hire.

Both direct and circumstantial evidence are admissible to prove a specification. Upon our examination of the

record, the totality of the evidence, including that bearing upon the doctrine of complicity, was sufficient for the jury to have found appellant guilty as specified pursuant to R. C. 2929.04(A)(2). This proposition of law is overruled.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT, CELEBREZZE, P. BROWN, SWEENEY and LOCHER, JJ., concur.

WILLIAM B. BROWN, J., concurring. The rationale behind the opinion in *Doyle* v. *Ohio* (1976), 426 U. S. 610, 49 L. Ed. 2d 91, is that defendants have the right to be given *Miranda* warnings, that those warnings make it clear that they have the right to be silent, and that, since "silence in the wake of these warnings, may be nothing more than the arrestee's exercise of these *Miranda* rights,"( *Doyle*, at page 97) a defendant cannot be impeached with that silence when he introduces exculpatory testimony for the first time at trial. The majority opinion implies that "garrulousness" in general may be sufficient to prevent the application of *Doyle* to subjects about which the defendant *has* been silent. By doing so, it imposes a duty on a defendant to be silent on *all* matters concerning the crime once he is read his *Miranda* warnings if he is to take advantage of the *Doyle* holding. There is nothing in the *Doyle* opinion to support the majority's interpretation. Since, however, the defendant in the instant cause failed to object to being impeached with his silence, and since I feel that his failure to object outweighs the possible prejudice of the prosecution's impeachment, I concur in the holding of the majority.