OPINION
{¶ 1} Defendant-appellant, William Kling, appeals his convictions and sentence in the Butler County Court of Common Pleas on three counts of complicity to aggravated robbery. We affirm the decision of the trial court.
 {¶ 2} On September 26, 2002, appellant drove his green Jeep Eagle and picked up co-defendant, James Elmore ("Elmore"), at his Milford residence. Elmore gave appellant $225.00 who then purchased cocaine for Elmore. After "doing a couple of lines" of cocaine, appellant and Elmore met Elmore's estranged wife, Michelle Elmore ("Michelle"), at Kroger's on Cincinnati-Dayton Road in West Chester. Elmore gave Michelle money for his child support obligation. Thereafter, Michelle left the Kroger parking lot and drove to Dairy Mart across the street. Elmore and appellant also drove together to the same Dairy Mart. Cynthia Dawson ("Dawson") pulled up to the gas pumps and noticed appellant, who was pumping gas. Appellant then walked into Dairy Mart to pay for the gas and purchase beer and cigarettes. Once inside, appellant made a hand motion with his right arm, which was caught by the security camera. The motion appeared to resemble a gesture as if to say "hey buddy, it's okay." However, appellant alleged this motion was to indicate which gasoline pump he used to fill his car. Michelle walked into Dairy Mart shortly after appellant; appellant left before Michelle finished receiving change from the cashier, Christina Hyde ("Hyde"). Dawson then entered Dairy Mart to purchase a few items.
 {¶ 3} Within one or two minutes after appellant exited the store, Elmore walked into Dairy Mart wearing rubber gloves, a long sleeve shirt, and black pantyhose pulled over his head. Elmore also carried a knife. He first approached Dawson and pushed her on the ground demanding her money. Next, he approached Michelle and threw her across the room, and then demanded that Hyde give him the money in the cash register. No one saw where Elmore went after he left Dairy Mart.
 {¶ 4} Appellant testified that he got in his car and drove 3.6 miles to his residence without Elmore. However, Elmore testified that appellant pulled his car to the side of Dairy Mart and had the idea to rob the store because there was enough money in the cashier's drawer to buy more crack. Elmore also testified that appellant gave him rubber gloves, "a pretty good size" knife, pantyhose, and a long sleeve shirt from the trunk of his car. Furthermore, after Elmore robbed the store, appellant was waiting for him in his car around the corner. Elmore testified that he and appellant went to Hamilton and bought cocaine with the stolen money.
 {¶ 5} The following day, Hamilton police detectives arrested Elmore outside his Milford residence. Elmore admitted his participation in the robbery. Later that day, Detective Ken Hardin ("Det. Hardin") of the Butler County Sheriff's Office found appellant at his home, and identified the green Jeep Eagle as a possible match to the description Dawson gave police. Appellant's wife, Becky Kling ("Becky"), drove him to the police station for questioning, where Det. Hardin interviewed him. Later, appellant signed a Miranda card and Hardin proceeded to take a taped statement. Appellant initially told police that he was at Dairy Mart with a man by the name of Stout, whose nickname was "Elmo." During appellant's interview, Lieutenant Gary Craft ("Lt. Craft") of the Butler County Sheriff's Office had a conversation with Becky in the parking lot of the police station. Lt. Craft testified that Becky informed him that "Elmo" and Stout were not the same people. After further questioning, appellant admitted that "Elmo" was Elmore, not Stout. Appellant also admitted that he was with Elmore at Dairy Mart, but had no knowledge of the robbery. Lt. Craft testified that appellant later changed his story and admitted that "well, yeah, when [Elmore] come out [of the Dairy Mart] I knew what he done, but I didn't get any of the money from it. And I drove him straight to my house, I went in and went to bed and he went home." According to Lt. Craft, appellant then agreed to provide a final written statement to the police, but never actually wrote anything down. Appellant testified at trial that his statement to the police was false. Appellant testified that Elmore called him on the night of the robbery and told him he robbed Dairy Mart.
 {¶ 6} Lt. Craft informed Becky that the green Jeep Eagle must be kept at the police station because he thought it was used in a felony armed robbery. Lt. Craft testified that Becky proceeded to show him where appellant hides things in his car: in the trunk underneath the carpet. Lt. Craft alleged that he saw pantyhose, and a bag, and then instructed Becky to close the trunk because he needed a search warrant to search the vehicle. Becky testified that she never told Lt. Craft about the trunk, never pulled back the vehicle's carpet, and never saw pantyhose or gloves. However, Becky testified that she opened the trunk of the car and told Lt. Craft he could look in it. Furthermore, appellant signed a consent to search form and allowed the police search his car. The search uncovered a bag full of latex surgical gloves and pantyhose. Becky and appellant's father, Thomas Kling, testified that rubber gloves are necessary for appellant's line of work. Becky also testified that it would not be unusual if she left a pair of pantyhose in the back of the car because she wears them when she goes out at night.
 {¶ 7} A jury trial was held on June 4 and 5, 2003. Appellant was found guilty on three counts of complicity to aggravated robbery in violation of R.C. 2923.03(A)(2). On July 23, 2003, appellant was sentenced to serve nine years for each violation, and was fined $10,000 under count one. The trial court ordered the sentences to be served concurrently to each other. Appellant appeals his convictions and sentence raising four assignments of error:
 {¶ 8} Assignment of Error No. 1:
 {¶ 9} "Due process was violated when the state referred to the appellant's post arrest silence."
 {¶ 10} Appellant argues that the "use of the appellant's post arrest and post Miranda silence to evidence guilt violates due process." Appellant argues that although he voluntarily made oral statements to the police, it was error for the state and Lt. Craft to refer to his refusal to give a written statement. In support of this contention, appellant cites to Doyle v. Ohio
(1976), 426 U.S. 610, 98 S.Ct. 2240, and Miranda v. Arizona
(1966), 384 U.S. 436, 86 S.Ct. 1602.
 {¶ 11} The record clearly shows that reference was made to the fact that appellant failed to provide police with a written statement, after being advised of his constitutional rights and making an oral statement to police. Nevertheless, appellant's reliance upon Doyle is misplaced. In Doyle, the Supreme Court held that use of a defendant's post Miranda silence for impeachment purposes violates the Due Process Clause of the Fourteenth Amendment. Yet, in Doyle, the issue was whether the prosecutor could cross-examine a defendant about his failure to tell any story after receiving his rights pursuant to Miranda.
In the instant matter, appellant gave an oral statement, but refused to reduce it to writing.
 {¶ 12} The fact pattern in the present case is analogous to the fact pattern of State v. Osborne (1977), 50 Ohio St.2d 211. In Osborne, the defendant spoke several times to different people, including police. The Court stated: "If a defendant voluntarily offers information to police, his toying with the authorities by allegedly telling only part of his story is certainly not protected by Miranda or Doyle. A contrary rule would foreclose any cross-examination, for fear that it might reveal impeaching information intentionally withheld and inextricably interwoven with that which was divulged." Id. at 216.
 {¶ 13} Likewise, in State v. Gillard (1988),40 Ohio St.3d 226, the defendant told police they were "barking up the wrong tree" and that he had been at a New Year's Eve Party. However, he refused to elaborate further on his alibi. The court held that it was proper to inform the jury that the defendant refused to give details to corroborate his alibi. "If [a defendant] talks, what he says or omits is to be judged on its merits or demerits, and not on some artificial standard that only the part that helps him can be later referred to." Id. citing Vitali v. United States
(C.A. 1, 1967), 383 F.2d 121, 123.
 {¶ 14} In the instant case, appellant willingly talked to the police, waiving his Miranda rights. He did not remain silent at the time of his arrest or afterwards and cannot rely on Doyle
to prevent the prosecutor from attempting to draw out what he said and did not say. A defendant's refusal to corroborate his statements to police in writing may be commented on at trial. SeeState v. Beasley (June 7, 1993), Cuyahoga App. No. 62852;State v. Lucaj (May 17, 1990), Cuyahoga App. No. 56933. Consequently, appellant's first assignment of error is overruled.
 {¶ 15} Assignment of Error No. 2:
 {¶ 16} "The evidence presented was insufficient to convict the appellant of complicity to aggravated robbery."
 {¶ 17} Appellant argues that he cannot be convicted of complicity to aggravated robbery because the state did not prove that he aided and abetted the principal.
 {¶ 18} Sufficiency is the "legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins, 78 Ohio St.3d 380, 386,1997-Ohio-52. Sufficiency is synonymous with adequacy. Id. The pertinent inquiry is whether, after reviewing the record in a light most favorable to the state, any rational fact-finder could determine that the essential elements of aggravated robbery were proven beyond a reasonable doubt. See State v. Smith,80 Ohio St.3d 89, 113, 1997-Ohio-355; State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 19} In reviewing the record for sufficiency, we conclude that there exists adequate evidence to support the jury's finding that appellant aided and abetted Elmore in committing aggravated robbery.
 {¶ 20} Appellant was convicted of complicity to aggravated robbery in violation of R.C. 2923.03(A)(2). R.C. 2923.03 provides in part that:
 {¶ 21} "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 {¶ 22} "* * *
 {¶ 23} "(2) Aid or abet another in committing the offense * * *."
 {¶ 24} R.C. 2911.01(A)(1) provides:
 {¶ 25} "(A) No person, in attempting or committing a theft offense, * * *, shall do any of the following:
 {¶ 26} "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it."
 {¶ 27} Appellant maintains that the stated failed to prove he aided and abetted Elmore. However, the state presented evidence to show that on September 26, 2002, appellant entered the Dairy Mart to pay for gas and purchase beer and cigarettes. Within one or two minutes after appellant exited the store, Elmore walked into Dairy Mart wearing rubber gloves, a long sleeve shirt, and black pantyhose pulled over his head. Elmore also carried a knife. Elmore approached Dawson, pushed her to the ground, and demanded her money. He then demanded the money in the cash register.
 {¶ 28} Elmore testified that appellant had the idea to rob the store because there was enough money in the cashier's drawer to buy more cocaine. According to Elmore, appellant gave him rubber gloves, "a pretty good size" knife, pantyhose, and a long sleeve shirt from the trunk of his car. Elmore testified that appellant was waiting for him in his car around the corner after he robbed the store.
 {¶ 29} On September 27, 2002, Det. Hardin questioned appellant. Appellant admitted that he was with Elmore at Dairy Mart. Furthermore, appellant gave his consent to let the police search his car and a bag of latex surgical gloves and pantyhose were discovered.
 {¶ 30} We find that there was sufficient evidence for the jury to find that appellant committed complicity to aggravated robbery. Consequently, the second assignment of error is overruled.
 {¶ 31} Assignment of Error No. 3:
 {¶ 32} "THE CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 33} Appellant argues that "the State failed to present evidence which would allow a rational jury to find that the Appellant committed the offenses charged."
 {¶ 34} The Supreme Court of Ohio described a proper weight-of-the-evidence analysis as follows: "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them.'" (Emphasis deleted.) Thompkins, 78 Ohio St.3d at 387, 1997-Ohio-52.
 {¶ 35} We must inquire whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id. We sit as the 13th juror when we decide whether to vacate a jury verdict as against the manifest weight of the evidence. Id. However, because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility. State v. Reed, 155 Ohio App.3d 435, 445,2003-Ohio-6536, at ¶ 51. Furthermore, a judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. State v. Martin (1983),20 Ohio App.3d 172, 175.
 {¶ 36} Elmore testified that appellant had the idea to rob the store to buy more cocaine. He testified that appellant provided him with rubber gloves, a long sleeve shirt, and black pantyhose to cover his head on September 26, 2002. Elmore then entered the Dairy Mart wearing the items and carrying a knife. He demanded the money in the cash register and from patrons of the Dairy Mart. Elmore also testified that appellant was waiting for him in his car around the corner after he robbed the store.
 {¶ 37} On September 27, 2002, appellant was questioned and admitted that he was with Elmore at Dairy Mart. Furthermore, appellant gave his consent to let the police search his car and a bag of latex surgical gloves and pantyhose were discovered in the vehicle.
 {¶ 38} Based on the record, we cannot conclude that the jury "clearly lost its way." We therefore conclude that appellant's convictions for complicity to aggravated robbery were not against the manifest weight of the evidence. The third assignment of error is overruled.
 {¶ 39} Assignment of Error No. 4:
 {¶ 40} "The court erred in imposition of a 9 year sentence and fine on appellant."
 {¶ 41} Appellant argues that "the Court erred in imposing a nine-year sentence without the proper findings and in imposing a $10,000 fine upon the Appellant." Appellant maintains that his inability to pay fines and costs is demonstrated by the finding that he is indigent for purposes of receiving appointed counsel.
 {¶ 42} R.C. 2929.18 authorizes a trial court to impose financial sanctions upon felony offenders. However, before imposing a financial sanction under R.C. 2929.18, the trial court "shall consider the offender's present and future ability to pay the amount of the sanction or fine." R.C. 2929.19(B)(6). A trial court that imposes a financial sanction upon an offender may hold a hearing on the offender's ability to pay fines or restitution, but a hearing is not required. R.C. 2929.18(E). As with other aspects of a criminal sentence, an appellate court cannot modify a financial sanction unless it finds by clear and convincing evidence that it is not supported by the record or is contrary to law. See R.C. 2953.08(G); State v. Blanton (Mar. 19, 2001), Butler App. No. CA99-11-202.
 {¶ 43} R.C. 2929.18(A)(3)(a) provides that a fine for a first-degree felony shall be "not more than twenty thousand dollars." Appellant was convicted of three first-degree felonies. The imposed $10,000 fine is less than the amount allowed under R.C. 2929.18(A)(3)(a) for a single first-degree felony. Therefore, we do not find that a fine amounting to less than 17 percent of the possible maximum penalty is unreasonable.
 {¶ 44} Furthermore, the trial court considered appellant's ability to pay the fine without undue hardship. See State v.Polick (1995), 101 Ohio App.3d 428, 432. In its August 11, 2003 judgment of conviction entry, the trial court states that it "has considered the defendant's present and future ability to pay the amount of any sanction or fine."
 {¶ 45} Additionally, a determination that a criminal defendant is indigent for purposes of receiving appointed counsel does not prohibit the trial court from imposing a financial sanction. State v. Kelly (2001), 145 Ohio App.3d 277, 283. The ability to pay a fine over a period of time is not equivalent to the ability to pay legal counsel a retainer fee at the onset of criminal proceedings. State v. Johnson (1995),107 Ohio App.3d 723, 728, appeal not allowed (1996), 75 Ohio St.3d 1484. Accordingly, the fact that appellant has had appointed counsel for the duration of this case does not require this court to conclude that the trial court's imposition of fines is contrary to law. Consequently, we find that the $10,000 fine imposed upon appellant is not contrary to law and is supported by the record.
 {¶ 46} Appellant also argues that the trial court erred in imposing a nine-year sentence without the proper findings. R.C.2953.08, which governs the appeal of felony sentences, dictates that an appellate court may not disturb a sentence imposed under felony sentencing law unless it finds by clear and convincing evidence that the sentence is not supported by the record or is contrary to law. State v. Garcia (1998), 126 Ohio App.3d 485,487. Upon review, the appellate court shall examine the record, including the presentence investigative report, the trial court record, and any oral or written statements made to or by the court at the sentencing hearing. R.C. 2953.08(F)(1)-(4). Additionally, a trial court is given broad discretion when sentencing within the confines of statutory authority. State v.Wright (1998), 126 Ohio App.3d 628, 632.
 {¶ 47} The penalties for felonies of the first degree are set forth in R.C. 2929.14, which provides that first-degree felonies are punishable by prison terms from three to ten years. By imposing a nine-year sentence, the trial court imposed a term less than the maximum and within the confines of statutory authority.
 {¶ 48} However, appellant contends the trial court erred by imposing more than the minimum allowable sentence. The Ohio Revised Code states that if an offender has not served a previous prison term, the trial court must impose the minimum sentence unless it finds on the record that a minimum sentence would "demean the seriousness of the offender's conduct" or "not adequately protect the public from future crime by the offender or others." R.C. 2929.14(B).
 {¶ 49} In State v. Edmonson, 86 Ohio St.3d 324, 326,1999-Ohio-110, the Ohio Supreme Court "construed [R.C.2929.14(B)] to mean that unless a court imposes the shortest term authorized on a felony offender who has never served a prison term, the record of the sentencing hearing must reflect that the court found that either or both of the two statutorily sanctioned reasons for exceeding the minimum term warranted the longer sentence."
 {¶ 50} In the instant matter, the trial court's judgment entry states that its sentence has "balanced the seriousness and recidivism factors" listed in R.C. 2929.12. During appellant's July 23, 2003 sentencing hearing, the trial court noted that it had "carefully considered all the sentencing factors and the criteria under the Ohio Revised Code." The court also noted that "more than the minimum sentence was required because it would demean the seriousness of the offense, and it would not adequately protect the public based upon this defendant's prior criminal record." Under Edmonson, the trial court is not required to give the reasons for its finding that the shortest term of imprisonment would demean the seriousness of the offense and would not adequately protect the public from future crime by the offender.
 {¶ 51} Given this record, we conclude that the trial court complied with R.C. 2929.14(B) in sentencing appellant to more than the minimum sentence. Consequently, we find that appellant's sentence and fine are not contrary to law and are supported by clear and convincing evidence. Therefore, the fourth assignment of error is overruled.
Judgment affirmed.
Young, P.J., and Valen, J., concur.