OPINION
{¶ 1} Defendant-appellant, Joseph White, appeals his convictions in the Butler County Court of Common Pleas for driving both under the influence of alcohol ("DUI") and with a suspended driver's license ("DUS").
 {¶ 2} Appellant was indicted in May 2003 on one count of DUI in violation of R.C. 4511.19(A)(1) and one count of DUS in violation of R.C. 4507.02(B). At the time, appellant already had three DUI convictions in six years. The new charges stemmed from a single-vehicle accident on State Route 122 in Madison Township, Butler County, Ohio in the early morning hours of January 25, 2003, wherein appellant allegedly drove his sister's car off the road, hitting two mailboxes and coming to a rest next to a guardrail. The case proceeded to a jury trial on July 31, 2003.
 {¶ 3} At trial, the state presented the testimony, among other witnesses, of the officer who responded to the accident, three paramedics, and a passerby driver. Tara Dumouchelle works for a shuttle service providing free rides home to bar patrons. Dumouchelle testified that around 2:30 a.m. on January 25, 2003 she was driving patrons home on State Route 122 when she came upon a single-car accident. A white male was sitting sideways in the car's driver's seat with his feet on the ground. Two other white males were standing near the car. Dumouchelle heard the individual in the car asking the other two men what he was going to do. Dumouchelle saw no one else at the scene. She did see another car "up ahead" on the side of the road. Because no one was injured, Dumouchelle left the scene but called 9-1-1.
 {¶ 4} Deputy Terry Kiefer of the Butler County Sheriff's Office arrived at the scene of the accident at 2:46 a.m. There, he observed a parked car as well as the car involved in the accident, a gray Mercury Cougar. The Cougar was registered to Geri Ann South, appellant's sister. The deputy testified that it was a very cold night and that State Route 122 was wet and slick due to snow. At the scene, Deputy Kiefer was approached by two men who told him what they thought had happened. After a brief conversation with the two men, Deputy Kiefer approached appellant who was standing five to ten feet away from the Cougar. The deputy did not observe any doors of the Cougar opened. As the deputy was busy with appellant, the two men left before the deputy could get their names and phone numbers.
 {¶ 5} Deputy Kiefer began questioning appellant, asking him where he was going, if he was hurt, and if anyone else was in the car with him. Although conscious, alert, and looking at the deputy, appellant did not answer at all. Deputy Kiefer testified that he observed no injuries on appellant and that appellant was highly intoxicated. The deputy then asked appellant to perform field sobriety tests. Again, appellant did not respond. Appellant did, however, voluntarily follow the deputy to the police cruiser where he sat until the paramedics' arrival. Deputy Kiefer testified he had to assist appellant to the cruiser to keep him from falling. The only information provided by appellant to the deputy at the scene was his social security number. Deputy Kiefer never asked appellant if he was driving the Cougar before the accident. When the Cougar was towed from the scene, the keys were found in the ignition.
 {¶ 6} Paramedics from the Madison Township Life Squad arrived at the scene at 2:52 a.m. Initially, appellant refused medical treatment but eventually agreed to go to the hospital. On the way to the hospital, appellant seemed confused and disoriented but was conscious at all times and very chatty. Appellant also smelled so strongly of alcohol that the paramedics had to open the doors of their vehicle at the hospital.
 {¶ 7} Appellant told the paramedics three different stories as to where he was going that night. Appellant told them he was going home. He then told them he was on his way to pick up his daughter. Finally, appellant told them he was going to the store. The paramedics testified that appellant never mentioned that someone else was driving or that anyone else was riding in the car with him. During his conversation with the paramedics, appellant consistently used the term "I" and never used "we" or "us." At the hospital, Deputy Kiefer asked appellant to submit to a blood alcohol test. Appellant did not respond. The deputy then cited appellant for DUI, DUS, and failure to control a vehicle.
 {¶ 8} At the close of the state's case, appellant moved for a judgment of acquittal under Crim.R. 29(A). The trial court denied the motion. Appellant then testified and presented the testimony of Geri Ann South (his sister), Jessica White (his daughter), and Joey Gibson (Jessica's boyfriend) on his own behalf.
 {¶ 9} Appellant, South, White, and Gibson all testified that appellant and South came to White's apartment in the evening of January 24, 2003 to bring groceries. All four testified they spent the evening talking until appellant and South left the apartment in the early morning hours of January 25, 2003. All four testified that when appellant and South left the apartment to go back to appellant's home, where South was temporarily residing, South was driving the Cougar. White admitted that prior to the trial, she had never told the authorities her aunt was the one driving the Cougar. Neither White nor Gibson considered appellant to be intoxicated when he left the apartment.
 {¶ 10} South testified that she was driving on State Route 122 when she went off the road because she could not see the snow covered fog line. South hit two mailboxes, overcorrected her error, drove across the road, and hit a guardrail. At the time, South was driving under a suspended license. Appellant and South both testified that the passenger door would not open because it was jammed shut. As a result, appellant had to exit the car via the driver's door. However, on rebuttal, a deputy sheriff testified that when he took pictures of the car several months later, the passenger door freely opened.
 {¶ 11} Both appellant and South testified that shortly after the accident, a car with two young women pulled up and offered help. Because the women did not have a cellular phone, South asked them to take her to appellant's house to call for help. Appellant stayed at the scene while South went for help. After she was dropped off at appellant's house, South tried to call two siblings but could not reach them. South testified that she was worried about appellant being at the scene by himself and about the car being hit. Yet, while she kept calling her siblings, she never called 9-1-1 or the police. According to South, because she could not get a hold of her siblings, she was panicking and crying and did not know what to do. As a result, she just stayed at the house until appellant came back three hours later.
 {¶ 12} South also testified that two days after the accident, she told appellant's attorney she was the one driving the Cougar. South, however, did not testify in front of a grand jury. She explained that she first refused to testify because she did not have an attorney, and that, once she had an attorney, she exercised her Fifth Amendment Right not to testify (arguably because of her driving under a suspended license).
 {¶ 13} Appellant testified that while at his daughter's apartment he drank a couple of beers and one or two shots of tequila. Appellant denied driving the Cougar before the accident. Appellant testified that following the accident he was dazed at the scene and at the hospital, and as a result did not remember much about his interaction with Deputy Kiefer or the paramedics. Appellant did remember the two young women pulling up for help, and his sister telling him to stay at the scene while she was going for help. Appellant did not remember the deputy asking him to perform field sobriety tests or submit to a blood alcohol test. Appellant did not remember conversing with the paramedics.
 {¶ 14} Appellant admitted he never told Deputy Kiefer his sister was driving the Cougar. Appellant explained that because he knew her driver's license was suspended he did not know what to do at the time and, as a result, said nothing to the deputy.
 {¶ 15} On August 1, 2003, the jury found appellant guilty of DUI in violation of R.C. 4511.19(A)(1) and DUS in violation of R.C. 4507.02(B). This appeal follows in which appellant raises three assignments of error.
 {¶ 16} In his first assignment of error, appellant argues that the trial court erred by denying his Crim.R. 29(A) motion at the close of the state's case. In his third assignment of error, appellant argues that his convictions for DUI and DUS were against the manifest weight of the evidence. At the heart of both arguments is appellant's claim that the state failed to show beyond a reasonable doubt that he was operating the Cougar either before or after the accident.
 {¶ 17} Under Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus. "The evidence must therefore be extremely strong in favor of a defendant in order for a motion for acquittal to be granted."State v. Kellum (June 22, 1998), Clinton App. No. CA97-11-012, at 10.
 {¶ 18} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is "to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 19} A challenge to the manifest weight of the evidence attacks the credibility of the evidence presented. State v.Thompkins, 78 Ohio St.3d 380, 386-387, 1997-Ohio-52. "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id. at 387.
 {¶ 20} An appellate court will not reverse a judgment as being against the manifest weight of the evidence in a jury trial unless it unanimously disagrees with the jury's resolution of any conflicting testimony. Id. at 389. When reviewing the evidence, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 21} Appellant was convicted of driving under the influence of alcohol and with a suspended driver's license. R.C.4511.19(A)(1) states in relevant part that "No person shall operate any vehicle * * * within this state, if, at the time of the operation, * * * [t]he person is under the influence of alcohol[.]" R.C. 4507.02(B), likewise, prohibits anyone from operating a vehicle if that person's driver's license is suspended. The prohibition under either statute is clearly against "operating" a vehicle while intoxicated or with a suspended license, not merely "driving" it.
 {¶ 22} The Ohio Supreme Court has consistently held that the operation of a vehicle within the contemplation of R.C.4511.19(A)(1) is a broader term than driving. See State v.Cleary (1986), 22 Ohio St.3d 198. A person may operate a vehicle even though the vehicle is not moving. Id. Indeed, to be found in violation of R.C. 4511.19(A)(1), it is only necessary that the person be in the driver's seat of a parked motor vehicle with the key in the ignition while under the influence of alcohol. See, id; State v. McGlone (1991), 59 Ohio St.3d 122. "[E]ach `drunken driving' case is to be decided on its own particular and peculiar facts." Cleary at 200.
 {¶ 23} Appellant argues that there was insufficient evidence that he was operating the Cougar on January 25, 2003. We disagree. Upon examining the circumstantial evidence adduced at trial by the state, we find that such evidence, if believed, reasonably supports a finding that appellant was operating the Cougar prior to the accident.
 {¶ 24} An individual was observed sitting in the car's driver's seat with his feet on the ground asking two men nearby what he was going to do. An inference could be made that the individual was appellant, as opposed to a passerby driver. A deputy subsequently found appellant standing near the wrecked vehicle. No one else involved with the accident was at the scene. Appellant never indicated to the deputy or the paramedics that someone else was driving the car or that anyone was riding in the car with him. In chatting with the paramedics, appellant never used "we" or "us" but instead always used "I." Appellant also gave them three different versions as to his destination at the time of the accident. When the car was towed, the keys were found in the ignition. The evidence showed that at the time of the accident appellant was intoxicated. Further, it was stipulated at trial that on January 25, 2003 appellant's driver's license was suspended.
 {¶ 25} Viewing this evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could find that prior to the accident appellant was operating the Cougar while intoxicated and with a suspended driver's license in violation of R.C. 4511.19(A)(1) and 4507.02(B). Appellant's DUI and DUS convictions are therefore supported by sufficient evidence, and the trial court did not err by denying his Crim.R. 29(A) motion. Appellant's first assignment of error is overruled.
 {¶ 26} Appellant also argues that his DUI and DUS convictions were against the manifest weight of the evidence because he was not operating the Cougar before or after the accident. We disagree.
 {¶ 27} In addition to the evidence recited earlier, the jury also heard testimony on appellant's behalf. Appellant, his sister, his daughter, and the daughter's boyfriend all testified that the sister was driving the Cougar when she and appellant left the daughter's apartment. Appellant and his sister both testified that after the accident appellant had to exit the Cougar via the driver's door because the passenger's door was jammed shut. Yet, a deputy photographing the car months later had no problem opening the passenger's door. Appellant's sister also testified that she was worried about appellant being at the scene. While she tried to reach two siblings, she never called 9-1-1 or the police. Instead, she stayed at appellant's house panicking and crying until appellant returned three hours later. Appellant testified he did not tell Deputy Kiefer about his sister because he knew she was driving with a suspended driver's license.
 {¶ 28} After a careful review of the record, we cannot conclude that the jury lost its way and committed a manifest miscarriage of justice in convicting appellant of DUI and DUS. Although appellant presented testimony his sister was driving the Cougar on the night of the accident, we refuse to overturn the verdict because the jury did not believe the testimony presented on appellant's behalf. "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony." State v. Zentner, Wayne App. No. 02CA0040, 2003-Ohio-2352, ¶ 21. Appellant's DUI and DUS convictions are not against the manifest weight of the evidence. Appellant's third assignment of error is overruled.
 {¶ 29} In his second assignment of error, appellant argues that the trial court erred by improperly instructing the jury on the element of operation. In its jury instructions, the trial court defined operating a vehicle, whether under the influence of alcohol or with a suspended driver's license, as "to drive or be in actual physical control of a vehicle." Appellant argues that the trial court should have defined "actual physical control." Appellant contends that had the trial court defined "actual physical control," the jury would not have convicted him of DUI or DUS.
 {¶ 30} While appellant objected to the trial court's definition of a vehicle in its jury instructions, he did not object to the foregoing definition of operate. Absent plain error, the failure to object to jury instructions as required under Crim.R. 30 is a waiver of the issue on appeal. State v.Underwood (1983), 3 Ohio St.3d 12, syllabus. Plain error does not exist unless, but for the error, the outcome of the trial clearly would have been otherwise. Id. at 14.
 {¶ 31} Looking at the trial court's definition of operate in the context of the overall jury instructions, we are not persuaded that the outcome of the trial clearly would have been otherwise had the trial court defined "actual physical control." We find that those three words together are not words so arcane, so unusual, or used so rarely as to be beyond the comprehension of ordinary citizens. We therefore find that the trial court did not err by failing to define "actual physical control." Appellant's second assignment of error is overruled.
Judgment affirmed.
Walsh and Valen, JJ., concur.