JOURNAL ENTRY AND OPINION
{¶ 1} Defendant Terrance Walter, aka Terrance Ward, appeals from his convictions for aggravated murder, aggravated burglary and felonious assault. For the reasons set forth below, we affirm the convictions for aggravated murder and felonious assault but we reverse the convictions for aggravated burglary and remand for vacation of these convictions.
 {¶ 2} On August 22, 2006 defendant and co-defendant Antonio Campbell were indicted pursuant to a four-count indictment which charged them with the aggravated murder of Samuel Sims, Jr., two counts of aggravated burglary, and felonious assault all with three-year and six-year firearm specifications. Campbell subsequently entered into a plea agreement with the state.
 {¶ 3} The matter against defendant proceeded to a jury trial on June 7, 2007. The state's evidence demonstrated that, on February 10, 2003, an individual came to the victim's home on East 70th
Street and asked if he could shovel the driveway. Sims' wife, Nashell, declined via an intercom system, and did not open the door. Later that day, Sims picked up his then-nine-year-old son, Samuel Sims, III, or "Tres" from wrestling practice and stopped briefly at Walgreen's before returning home. According to Tres, his father opened the garage with the remote opener. His father got out of the car and Tres followed him as he entered the garage. Tres then observed someone dressed in black with a black ski mask run toward them from the back of the house. Tres testified that he saw the individual shoot into the garage then *Page 5 
flee. He then saw his father lying on the garage floor. The individual then ran toward the parking lot of nearby apartments. As a result of witnessing the shooting, Tres has undergone counseling and is home-schooled.
 {¶ 4} Nashell heard the shots and ducked to the ground with her newborn. She called her husband. Tres then entered and pointed to his father on the floor of the garage. Nashell called 9-1-1 and began C.P.R.
 {¶ 5} Sims, Jr. sustained three gunshot wounds, two to the left flank of the back, and one on the right hip. The bullet that entered the left flank perforated the stomach and liver then entered the chest cavity and perforated the heart, causing extensive internal bleeding.
 {¶ 6} Police responding to the scene observed footprints leading from East 71st Street to the back of the house. They also found .40 caliber shell casings inside and outside of the garage, a spent round inside the garage beneath a freezer and near a small flight of steps, and a bullet hole in a toolbox. Det. Melvin Smith observed footprints from Nike tennis shoes at the outside of the garage and continuing to a field and toward East 69th Street. Smith followed the prints to this area and located a ski cap and a potato which, according to other witnesses for the state, had a hollowed out core, which suggested that it could have been used as a crude, homemade silencer for a semiautomatic weapon.[1] It did not contain primer residue, however. Smith also *Page 6 
tracked the footprints through the field and found a .40 caliber Ruger semiautomatic handgun. The footprints were 13 inches from end to end. The evidence demonstrated that defendant's foot measured approximately ten and 1/4 inches, he wears a size nine shoe, and Campbell wears a size 14.
 {¶ 7} A ballistics expert for the state testified that, to a reasonable degree of scientific certainty, the .40 caliber shell casings came from the weapon recovered by Det. Smith in the field near Sims' home.
 {¶ 8} Alice James, former wife of defendant's friend Carlos Williams, established that, on February 26, 2004, defendant left a message for James on her cell phone. James called defendant back and defendant stated that Williams had gotten some people angry, that these people had a list of defendant's family members and their addresses and that Williams had better keep his mouth shut. James inquired if her name was on this list and defendant replied that it was and that her children's names were also on the list. She then reported the conversation to Williams.
 {¶ 9} Co-defendant, Antonio Campbell, testified that he entered into a plea agreement with the state whereby he would receive three years of imprisonment for his role in connection with this matter. He stated that he was born in 1982 and that defendant is much older than he. Over strenuous defense objection, Campbell testified that, on January 29, 2003, defendant asked if Campbell would accompany him and another individual to Pittsburgh in order to beat up a girl with a baseball bat. Defendant offered Campbell $500 and Campbell agreed. Defendant instructed *Page 7 
Campbell to wear dark clothing and he cut eye holes in a ski cap. Campbell testified that he wore the hat and hid in wait for the woman to arrive home, but never found her. Campbell further stated that he left the hat in defendant's car.
 {¶ 10} Campbell also testified that on February 10, 2003, defendant offered him $2,500 to drive him to an address near Hough. Campbell agreed. At this time, Campbell was wearing Timberland boots, and defendant was wearing dark clothing and Nike tennis shoes. Defendant left the car and Campbell waited approximately one hour for defendant to return and heard gunshots. Campbell stated that defendant owned a gun but he denied seeing it that night, and also denied seeing defendant with a gun, mask or potato.
 {¶ 11} Campbell admitted that he made three separate statements to police. In the first statement, which was written, Campbell indicated that he had acted as the lookout for defendant. Campbell testified that he falsely made this claim in order to obtain a benefit in another matter. He then made a second, verbal statement. Police later determined that the ski cap, which was found near the scene, contained a mixture of DNA and that Campbell was the major contributor to this mixture. Thereafter, Campbell made a third, written statement to the police in which he claimed that he had simply waited in the car. When confronted with evidence of additional footprints near the car, he stated that he left the car to urinate during the time he was waiting for defendant to return.
 {¶ 12} Carlos Williams testified to his prior criminal record. He also testified that *Page 8 
he asked defendant if he had shot someone in front of the individual's child. According to Williams, defendant stated that he "did what he had to do." Williams next testified that he was facing unrelated criminal charges and offered to provide information to the police in exchange for leniency in the unrelated matter. He decided to tell the police that Campbell shot Sims, believing that this would, in turn, cause Campbell to inform the police that defendant was the actual shooter. Williams admitted that he was placed in North Coast Behavioral Center in connection with a criminal matter and that he has been diagnosed as a malingerer.
 {¶ 13} Defendant was subsequently arrested on a fugitive warrant while he was exiting a car on August 11, 2006. A search of the vehicle revealed a knapsack in the trunk which contained binoculars, a nightstick, duct tape, coils of rope, a hollowed-out potato, a black bandana and black gloves. Kevin Barhams, who was with defendant at the time of the arrest, and whose girlfriend owns the car they had been riding in, testified that he owned some of the items in the car. According to Det. Robert McKay, at the time of the arrest, Barhams said that nothing in the vehicle belonged to him. An insufficient quantity of DNA was extracted from the bandana and a DNA mixture from possibly three people was detected from swabs of the interiors of the gloves. The evidence demonstrated, however, that defendant could not be excluded as a contributor and, that in a grouping of African Americans (including defendant), one in 83 individuals could not be excluded as contributors.
 {¶ 14} F.B.I. Special Agent Gregory Curtis testified that he investigates drug *Page 9 
trafficking in the Cleveland Area and that the F.B.I. obtained a court order for a wiretap on Sims' cell phone in September 2002. From the wiretap, the F.B.I. learned that Sims had received multiple pounds of marijuana, and multiple kilos of cocaine which he then sold in the Cleveland area. In November 2002, Sims' associate, Dwayne Jones, received a shipment of ten kilos of cocaine and Sims delivered two of them to Uniontown, Pennsylvania for resale. Special Agent Curtis contacted Pennsylvania State Troopers to detain the recipients of the drugs and seize the cocaine. Sims was not arrested or detained at this time, however, in order to prevent the wiretap from being exposed.
 {¶ 15} Agent Curtis subsequently advised defendant of his rights and interviewed him. During this interview, defendant said that he is a painter and also is involved in "hitting licks" or robberies in Cleveland and Pennsylvania. Defendant stated that he once kept a gun owned by Carlos Williams and had purchased Ruger .9mm guns for some of his jobs. Defendant reportedly became increasingly agitated during the interview, then argued with Det. Melvin Smith and refused to sign a written statement.
 {¶ 16} Defendant elected not to present evidence and was subsequently convicted of all counts. The trial court sentenced him to life imprisonment without the possibility of parole for 20 years on the aggravated murder charge, plus six years for the firearm specification, a concurrent term of five years imprisonment for the aggravated burglary charges, and a consecutive term of eight years for the felonious *Page 10 
assault charge, for a total sentence of 34 years. Defendant now appeals and assigns eleven errors for our review.
 {¶ 17} Defendant's first assignment of error states:
 {¶ 18} "The trial court erred when the trial court declined to hold a hearing and summarily denied Mr. Walter's request to proceed pro se."
 {¶ 19} The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall * * * have the Assistance of Counsel for his defense." Similarly, the Ohio Constitution provides: "In any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel." Section 10, Article I, Ohio Constitution.
 {¶ 20} The United States Supreme Court has also recognized that theSixth Amendment right to the assistance of counsel implicitly embodies a "correlative right to dispense with a lawyer's help." Adams v.United States ex rel. McCann (1942), 317 U.S. 269, 279, 63 S.Ct. 236,87 L.Ed. 268. The court clarified this right to proceed without counsel in the landmark case of Faretta v. California (1975), 422 U.S. 806,95 S.Ct. 2525, 45 L. Ed.2d 562. "Although not stated in the Amendment in so many words, the right to self-representation — to make one's own defense personally — is thus necessarily implied by the structure of the Amendment. The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails." (Footnote omitted.) Id. at 819-820, 95 S.Ct. 2525, 45 L.Ed.2d 562. AccordState v. Gibson (1976), 45 Ohio St.2d 366, 345 N.E.2d 399, paragraph one of the *Page 11 
syllabus ("a defendant in a state criminal trial has an independent constitutional right of self-representation and * * * may proceed to defend himself without counsel when he voluntarily, and knowingly and intelligently elects to do so.").
 {¶ 21} The right is not unlimited, however, as it must be explicit, unequivocal and timely made. State v. Cassano, 96 Ohio St.3d 94,2002-Ohio-3751, 772 N.E.2d 81. In that case, the Court noted that Cassano's request was untimely because it was made three days before the trial was to start. Id., citing to United States v. Mackovich (C.A.10, 2000), 209 F.3d 1227, 1237 (requests made six to ten days before trial "were merely a tactic for delay"); United States v. George (C.A.9, 1995), 56 F.3d 1078, 1084 (request untimely where it was made on eve of trial). Accord State v. Halder, Cuyahoga App. No. 87974, 2007-Ohio-5940
(request untimely where it was made four days before trial and only after the trial court had refused to disqualify trial counsel and appoint a third lawyer).
 {¶ 22} In this matter, defendant made his request on the fourth day of trial. The trial court therefore properly determined that the request was not timely. The request was properly denied.
 {¶ 23} This assignment of error is without merit.
 {¶ 24} Defendant's second and third assignments of error are interrelated and state:
 {¶ 25} "The trial court erred in when it admitted evidence that Mr. Walter committed robberies in Ohio and Pennsylvania, which testimony was admitted in *Page 12 
violation of R.C. 2945.59, Evid.R.404(B) and Mr. Walter's rights under Article I, Section 16 of the Ohio Constitution and theFourteenth Amendment to the United States Constitution."
 {¶ 26} "The trial court improperly admitted irrelevant and prejudicial evidence testimony relating to items taken from the vehicle in which Mr. Walter had ridden shortly before his arrest."
 {¶ 27} We note that "the admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v.Sage (1987), 31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus; see, also, State v. Bey, 85 Ohio St.3d 487, 490,1999-Ohio-283, 709 N.E.2d 484.
 {¶ 28} R.C. 2945.59 provides:
 {¶ 29} "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."
 {¶ 30} Similarly, Evid.R. 404(B) provides:
 {¶ 31} "Other Crimes, Wrongs or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in *Page 13 
conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 32} While "other acts" evidence may not be used to prove criminal propensity, such evidence may be admissible if (1) there is substantial proof that the alleged other acts were committed by the defendant, and (2) the evidence tends to prove notice, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. State v. Lowe, 69 Ohio St.3d 527, 530, 1994-Ohio-345,634 N.E.2d 616; see, also, Evid.R. 404(B); R.C. 2945.59. Further, under Evid.R. 404(B) and R.C. 2945.59, evidence of other acts is admissible if it tends to prove a specific element of the crime charged. State v.Smith (1990), 49 Ohio St.3d 137, 139-140, 551 N.E.2d 190.
 {¶ 33} As to the evidence that Mr. Walter committed robberies in Ohio and Pennsylvania, we note that according to the state's witness Special Agent Curtis, defendant admitted that he "hits licks" in Ohio and Pennsylvania. This was a clear admission against interest. Evid.R. 801(D)(2)(a), See State v. Bromagen, Clermont App. No. CA2005-09-087,2006-Ohio-4429, citing State v. Smith, Cuyahoga App. No. 79527, 2002-Ohio-2145. It was admissible on this basis.
 {¶ 34} As to the testimony relating to items taken from the vehicle in which Mr. Walter had ridden shortly before his arrest (knapsack containing binoculars, nightstick, duct tape, coils of rope, a hollowed-out potato, a black bandana and black gloves), we *Page 14 
note that such items were not inherently associated with criminal conduct and it is unclear to us how this implicates "other acts" concerns. State v. Fannin, Cuyahoga App. No. 80014, 2002-Ohio-4180. Rather such evidence was admissible in connection with the description of defendant's arrest. Cf. State v. Allen, 73 Ohio St.3d 626,1995-Ohio-283, 653 N.E.2d 675.
 {¶ 35} These claims are therefore without merit.
 {¶ 36} Defendant's fourth assignment of error states:
 {¶ 37} "The trial court improperly admitted evidence that Mr. Walter exercised his constitutional right to silence."
 {¶ 38} Defendant next complains that the trial court erroneously permitted the state to introduce evidence that defendant refused to provide a written statement to police.
 {¶ 39} In Doyle v. Ohio (1976), 426 U.S. 610, 96 S. Ct. 2240,49 L.Ed.2d 91, the Court held that the use for impeachment purposes of petitioners' silence, at the time of arrest and after receivingMiranda warnings, violated the Due Process Clause of theFourteenth Amendment.
 {¶ 40} In State v. Hill, Cuyahoga App. No. 87645, 2006-Ohio-6425, this court addressed a similar situation and stated:
 {¶ 41} "In this case, Hill was not entirely silent. After being advised of his Miranda rights, Hill waived his rights and gave an oral statement to the police. Hill, through his mother, exercised his right to remain silent when the detective told him *Page 15 
that his oral statement was going to be put in writing.
 {¶ 42} "In State v. Hankins, Cuyahoga App. No. 63360, 1993 Ohio App. LEXIS 4239, this court addressed a similar situation. InHankins, the defendant spoke twice to the police after his Miranda rights were given. In finding no Doyle violation, this court stated: `[Defendant] did not remain silent at the time of his arrest or afterwards and cannot rely on Doyle to prevent the prosecutor from attempting to draw out what he said and did not say. Defendant's refusal to corroborate his statements to [the] police in writing may be commented on at trial.' Id., citing State v. Beasley (June 7, 1993), Cuyahoga App. No. 62852, 1993 Ohio App. LEXIS 2904; State v. Lucaj, Cuyahoga App. No. 56933, 1990 Ohio App. LEXIS 1924.
 {¶ 43} "Thus, under the circumstances of this case, it was not improper for the state to question the detective about Hill's oral statement and the reason for the lack of a written statement memorializing his oral statement. See, also, State v. Smith, Cuyahoga App. No. 86690, 2006-Ohio-3156; State v. Kling, Butler App. No. CA2003-08-191, 2004-Ohio-3911."
 {¶ 44} We find the foregoing to apply herein. Defendant was advised of his rights and made an oral statement; he did not remain silent. He therefore cannot rely upon Doyle to prevent the prosecuting attorney from attempting to draw out what he said and did not say and the state was permitted to comment upon his refusal to corroborate his statements to the police in writing.
 {¶ 45} This assignment of error is without merit. *Page 16 
 {¶ 46} Defendant's fifth, sixth and seventh assignments of error are interrelated and state:
 {¶ 47} "There was insufficient evidence of trespass by stealth, force, or deception to sustain the conviction for aggravated burglary, alleged in Count Two."
 {¶ 48} "There was insufficient evidence of trespass by stealth, force, or deception to sustain the conviction for aggravated burglary, alleged in Count Three."
 {¶ 49} "There was insufficient evidence that Mr. Walter acted `knowingly' regarding the serious physical harm he allegedly caused to the alleged victim in Count Four [felonious assault]."
 {¶ 50} When reviewing a challenge to the sufficiency of the evidence, an appellate court must view the evidence in a light most favorable to the prosecution and determine if any rational trier of fact could have found the essential elements of the crime, proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph two of the syllabus, citing Jackson v. Virginia (1979),443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. Thus, a reviewing court will not overturn a conviction for insufficiency of "the evidence unless we find that reasonable minds could not reach the conclusion reached by the trier of fact." State v. Treesh, 90 Ohio St.3d 460, 484, 2001-Ohio-4,739 N.E.2d 749.
 {¶ 51} The essential elements of aggravated burglary are found in R.C.2911.11, which provides in relevant part as follows:
 {¶ 52} "(A) No person, by force, stealth, or deception, shall trespass in an *Page 17 
occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if any of the following apply: (1) The offender inflicts, or attempts or threatens to inflict physical harm on another * * *."
 {¶ 53} An attached garage was a "separately secured" portion of an occupied structure, for purposes of R.C. 2911.11(A)(3). State v.Wells (Jan. 19, 1994), Greene App. No. 92-CA-122; State v. Ward (1993),85 Ohio App.3d 537, 620 N.E.2d 168.
 {¶ 54} In this matter, however, Tres testified that the assailant walked up to the opened garage door and shot inside. We therefore conclude that the evidence was insufficient to establish a trespass into the garage and the aggravated burglary convictions must therefore be vacated.
 {¶ 55} This evidence is insufficient to support the offense of aggravated burglary. The fifth and sixth assignments of error are sustained and the trial court is ordered to vacate the burglary convictions.
 {¶ 56} As to the seventh assignment of error, we note that felonious assault under R.C. 2903.11(A)(2) provides that no person shall "[c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."
 {¶ 57} In State v. Lee (Sept.3, 1998), Franklin App. No. 97APA12-1629 discretionary appeal not allowed by State v. Lee (1999),84 Ohio St.3d 1470, 704 N.E.2d 578, the court upheld the defendant's conviction for felonious assault where the evidence at trial showed that he fired shots into a bedroom which was occupied by *Page 18 
three persons. The court stated:
 {¶ 58} "The evidence showed that shots were fired into or in the direction of each of the three persons in the bedroom. Firing into a bedroom supports an inference that the assailant was aware of the circumstances of his action, and knowingly caused or attempted to cause harm to the occupants therein."
 {¶ 59} Accord State v. Reed, Cuyahoga App. No. 89137, 2008-Ohio-312.
 {¶ 60} We find this reasoning applicable here. Tres was the stated victim of this offense and the evidence demonstrated that defendant opened fire into the garage and that Tres was behind his father and in close proximity to the areas where spent rounds and a casing was recovered. This claim is therefore without merit.
 {¶ 61} Defendant's eighth assignment of error states:
 {¶ 62} "The prosecution violated Mr. Walter's constitutional rights under Article I, Section 10 of the Ohio Constitution, theFifth Amendment to the United States Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution when it engaged in improper closing argument that commented upon the defendant's silence and was designed to appeal to the passions of the jury."
 {¶ 63} The test for prosecutorial misconduct is whether the alleged remark was improper and, if so, whether it prejudicially affected the substantial rights of the defendant. State v. Smith (2000),87 Ohio St.3d 424, 442, 2000-Ohio-450, 721 N.E.2d 93. "The touchstone `is the fairness of the trial, not the culpability of the prosecutor.'" Id., quoting Smith v. Phillips (1982), 455 U.S. 209, 219, 102 S. Ct. 940,947, *Page 19 71 L.Ed.2d 78.
 {¶ 64} With regard to the contention that the state improperly commented upon defendant's silence, we note that defendant did not invoke his right to silence but rather, spoke to police and declined to make a written statement. Defendant's refusal to corroborate his statements to police in writing may therefore be commented on at trial.State v. Hankins (Sept. 2, 1993), Cuyahoga App. No. 63360.
 {¶ 65} As to whether the prosecuting attorney made remarks "so inflammatory as to render the jury's decision a product solely of passion and prejudice," cf. State v. Williams (1986), 23 Ohio St.3d 16,20, 490 N.E.2d 906, we note that defendant lists various transcript pages but does not describe the nature of his objection. Our review finds only two potential appeals to juror passions: a reference to Tres viewing his father as his hero; and a reference to Tres' thoughts on Father's Day. The remaining remarks were simply fair comments upon the evidence. We find the hero comment a harmless assertion in light of the testimony from Tres that his father was his role model. We find the Father's Day comment isolated, fleeting and harmless beyond a reasonable doubt. State v. Murphy, 91 Ohio St.3d 516, 2001-Ohio-112; 747 N.E.2d 765
(Mother's Day comment harmless).
 {¶ 66} Defendant additionally complains that the prosecuting attorney improperly interjected his opinion into the case by stating that "we know this defendant was involved in this homicide." This remark was at the end of the argument and was more a summation than an expression of personal opinion. Finally, defendant *Page 20 
complains that the prosecuting attorney referred to matters not in evidence when he stated that defendant was smiling and laughing during a portion of the trial. The record contains nothing to demonstrate that this was a factual or erroneous claim but this type of remark has been deemed harmless. See State v. Fortson (Aug. 2, 2001), Cuyahoga App. No. 78240.
 {¶ 67} This assignment of error is without merit.
 {¶ 68} Defendant's ninth assignment of error states:
 {¶ 69} "The trial court erred in allowing jurors, and particularly alternate jurors, to submit questions of the witnesses at trial."
 {¶ 70} In State v. Fisher, 99 Ohio St.3d 127, 2003-Ohio-2761,789 N.E.2d 222, the Court held that "the decision to allow jurors to question witnesses is a matter within the discretion of the trial court and should not be disturbed on appeal absent an abuse of that discretion." Id. at 136. Defendant acknowledges the Fisher decision but submits that it was wrongly decided. We decline to adopt any other holding than that prescribed in Fisher Accord State v. Berry, Cuyahgoa App. No. 87493, 2007-Ohio-278; State v. Sanford, Cuyahoga App. No. 84478, 2005-Ohio-1009.
 {¶ 71} Defendant also maintains that the trial court erred in permitting alternate jurors to submit questions. In State v. Berry, supra, this court declined to make a distinction between questions by regular jurors and alternate jurors, and rejected this same challenge.
 {¶ 72} This assignment of error is without merit. *Page 21 
 {¶ 73} Defendant's tenth assignment of error states:
 {¶ 74} "Appellant was deprived of his liberty without due process when he was sentenced under a judicially altered, retroactively applied, and substantially disadvantageous statutory framework."
 {¶ 75} Within this assignment of error, defendant complains that the trial court erred in applying the principles set forth in State v.Foster, 109 Ohio St.3d 1, 2006-Ohio-856, to the sentence issued in this matter. This court has repeatedly rejected this claim of error. SeeState v. Harris, Cuyahoga App. No. 89669, 2008-Ohio-1633; State v.Tenbrook, Cuyahoga App. No. 89424, 2008-Ohio-53; State v. Sharp, Cuyahoga App. No. 89295, 2007-Ohio-6324; State v. Mallette, Cuyahoga App. No. 87894, 2007-Ohio-715.
 {¶ 76} As explained in Mallette, supra, the remedial holding ofFoster did not violate the defendant's due process rights or the ex post facto principles of the United States Constitution because:
 {¶ 77} "Mallette [the defendant] had notice that the sentencing range was the same at the time he committed the offenses as when he was sentenced. Foster did not judicially increase the range of his sentence, nor did it retroactively apply a new statutory maximum to an earlier committed crime, nor did it create the possibility of consecutive sentences where none existed."
 {¶ 78} This assignment of error is therefore without merit.
 {¶ 79} Defendant's eleventh assignment of error states: *Page 22 
 {¶ 80} "Mr. Walter received the ineffective assistance of counsel."
 {¶ 81} This court reviews a claim of ineffective assistance of counsel under the two-part test set forth in Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Under Strickland, a reviewing court will not deem counsel's performance ineffective unless a defendant can show his lawyer's performance fell below an objective standard of reasonable representation and that prejudice arose from the lawyer's deficient performance. State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373, paragraph one of the syllabus. To show prejudice, a defendant must prove that, but for his lawyer's errors, a reasonable probability exists that the result of the proceedings would have been different. Id. at paragraph two of the syllabus. Judicial scrutiny of a lawyer's performance must be highly deferential. State v. Sallie,81 Ohio St.3d 673, 674, 1998-Ohio-343, 693 N.E.2d 267. "Failure to do a futile act cannot be the basis for claims of ineffective assistance of counsel, nor could such a failure be prejudicial." State v.Henderson, Cuyahoga App. No. 88185, 2007-Ohio-2372.
 {¶ 82} In this assigned error, defendant claims that his trial counsel rendered ineffective assistance in connection with the other claimed errors and in connection with the failure to sever Count Four, involving then-nine-year-old Tres from the remaining counts as this prejudiced the jury against defendant on the remaining charges.
 {¶ 83} In so far as we have determined that the errors asserted in the other *Page 23 
assignments of error are without merit, they cannot serve as a basis for establishing trial error. See State v. Henderson (1988),39 Ohio St.3d 24, 33, 528 N.E.2d 1237.
 {¶ 84} As to the contention that counsel should have severed the count involving Tres, we note that Crim.R. 8(A), states:
 {¶ 85} "Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct."
 {¶ 86} In this matter, the evidence regarding Count Four which pertained to the child was clearly part of an ongoing single transaction which was connected to the other alleged offenses. The offenses occurred in the same general time frame and occurred in the same general location. Accord State v. Eads, Cuyahoga App. No. 87636, 2007-Ohio-539. In addition, counsel may have reasonably believed that one trial would be the best strategy to try and persuade the jury to return a verdict of not guilty on all counts of the indictment at the same time. Accord,State v. Fulk, Van Wert App. 15-07-08, 15-07-09, 2007-Ohio-6975.
 {¶ 87} This assignment of error is without merit.
Affirmed in part, reversed in part and remanded.
It is ordered that appellant and appellee shall split the costs herein taxed. *Page 24 
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. Case remanded to the trial court.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
CHRISTINE T. MCMONAGLE, P.J., and PATRICIA ANN BLACKMON, J., CONCUR
[1] According to Det. Smith, commercially available silencers require additional background checks and a special license. *Page 1